UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, | |
| Plaintiff, | Case No. |
| -against-. | **COMPLAINT** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

## INTRODUCTION

1. This action arises from the failure of the Environmental Protection Agency ("EPA") to respond to two requests from the Plaintiff, Environmental Defense Fund ("EDF"), under the Freedom of Information Act ("FOIA").

2. The electric power generation sector in the United States is a significant source of air pollution that harms human health and contributes to climate change, which is having increasingly damaging impacts on society through worsening fires, floods, and storms. Pursuant to the Clean Air Act, the EPA sets standards to reduce harmful air pollution from the power sector, in light of the best available science.

3. In Executive Orders 14154 and 14156, issued January 20, 2025, the President directed agencies, including EPA, to implement plans to "suspend, revise, or rescind all agency actions" imposing an "undue burden" on the "development [ ] or use of domestic energy resources"; and to "identify and exercise any lawful emergency authorities available to them, as well as all other lawful authorities they may possess, to facilitate the . . . generation of domestic energy resources," respectively.

4. On January 28, 2025, the EPA Acting Administrator dismissed the members of

the Science Advisory Board ("SAB") and Clean Air Scientific Advisory Committee ("CASAC"), two longstanding federal advisory committees that provide scientific review and expertise to the agency.

5. On March 12, 2025, EPA announced that it is reconsidering or "ending" multiple standards that limit air pollution from the power sector. EPA has since announced compliance exemptions for many facilities.

6. Weakening or removing these important standards would have significant, harmful consequences for communities across the country that are already experiencing the devastating effects of toxic power plant emissions as well as climate change.

7. To bring greater transparency regarding the new administration's actions to weaken or reverse air pollution protections and make sweeping changes to scientific advisory committees, EDF submitted two requests to the EPA pursuant to FOIA, seeking 1) records of communications with industry regarding Clean Air Act power plant programs, and 2) records related to the membership termination and "reset" of the SAB and CASAC.

8. EPA failed to produce any records in response to these requests and failed to make any determination on these requests by their respective statutory deadlines, violating EDF's rights under FOIA and depriving the public of vital records of clear and immediate public interest.

9. EDF files this action to enforce EPA's statutory obligations under FOIA, 5 U.S.C. § 552.

10. EDF seeks a declaration that EPA has violated FOIA and an injunction compelling EPA to promptly release all requested records.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to FOIA, which vests

2

jurisdiction in the district in which the complainant has its principal place of business. 5 U.S.C. § 552(a)(4)(B). Plaintiff EDF has its principal place of business in the Southern District of New York. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

12. Injunctive relief is appropriate under FOIA. 5 U.S.C. § 552(a)(4)(B). Declaratory relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

13. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C).

## PARTIES

14. Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to critical environmental problems through the use of law, policy, science, and economics. EDF has offices throughout the United States and maintains its principal office in the Southern District of New York.

15. EDF engages in extensive, daily efforts to inform the public about matters affecting environmental and energy policy, as well as about climate change science and the human health impacts of pollution. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, and active engagement on social media. EDF is frequently called upon to share its expertise on important environmental issues in the popular media and in other public forums.

16. EDF has long advocated for measures to protect communities from the harmful effects of air pollution and climate change. EDF advocated for and supported protective EPA standards to reduce air and climate pollution from large sources such as power plants, cars and

trucks, and oil and gas operations. These standards have been successful in significantly reducing harmful air pollution, including greenhouse gases, from power plants and other sources.

17. EDF is injured by EPA's failure to timely produce public records that were properly requested and to which EDF is entitled under FOIA. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617-18 (D.C. Cir. 2006) ("The requester is injured-in-fact for standing purposes because he does not get what the statute entitles him to receive.").

18. Defendant EPA is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is subject to FOIA. EPA has possession and control of the requested records and is responsible for fulfilling EDF's FOIA requests.

## LEGAL BACKGROUND

19. FOIA requires a federal agency to make public records "promptly available"—subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making the request. 5 U.S.C. § 552(a)(3)(A).

20. FOIA requires the agency to issue a determination on a FOIA request within 20 working days from the date of receipt. *Id*. § 552(a)(6)(A)(i); *see also* 40 C.F.R. § 2.104(a)(1).

21. The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. *Id.*

22. Mere notice of the agency's receipt of the request does not suffice for a "determination." Nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*,

711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

23. A FOIA requester may seek "expedited processing" of a request for records. A determination on a request for expedited processing must be made, and notice of that determination provided to the requester, within 10 days of the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii).

24. FOIA allows the agency to extend the 20-working-day deadline by up to 10 additional working days for "unusual circumstances" by providing written notice to the requester that describes the "unusual circumstances" and indicates the date on which the determination is expected to be issued. *Id.* § 552(a)(6)(B)(i).

25. If the agency fails to comply with FOIA's statutory deadline for issuing a determination on a request, the requester is deemed to have exhausted its administrative remedies and may file suit against the agency. *Id.* § 552(a)(6)(C)(i).

26. Under FOIA, an agency shall waive or reduce fees and costs incurred in responding to a FOIA request "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operation or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

27. This Court interprets FOIA's fee waiver provision to require that an agency's determination on a request for a fee waiver be made within the 20-working-day period. *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 4 (D.D.C. 2003) ("[I]f the agency fails to respond to a waiver request within 20 days, the requester is deemed to have constructively

exhausted administrative remedies and may seek judicial review.").

28. The agency bears the burden to prove the legality of its actions under FOIA. 5 U.S.C. § 552(a)(4)(B).

29. FOIA grants jurisdiction to the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*.

30. Under FOIA, this Court may assess attorney fees and costs against the United States if EDF substantially prevails in this action. *Id*. § 552(a)(4)(E).

## FACTUAL BACKGROUND

### A. EPA Standards to Reduce Air Pollution from Power Plants and Actions by the Current Administration to Undermine Such Standards

31. In 2024, EPA finalized several rules under Clean Air Act authorities to reduce harmful pollutants from power plants. The carbon dioxide emissions standards for existing coal-fired power plants and new gas-fired power plants are expected to reduce power sector emissions more than 62% below 2022 levels by 2035, with net climate and public health benefits estimated to be worth $370 billion through 2047. *See* EPA, Final Rule: *New Source Performance Standards for Greenhouse Gas Emissions From New, Modified, and Reconstructed Fossil Fuel-Fired Electric Generating Units*, 89 Fed. Reg. 39798 (May 9, 2024). In 2035, for example, the standards are expected to avoid 1,200 premature deaths, 360,000 cases of asthma symptoms, and 57,000 lost work days. *Id.*

32. The Mercury and Air Toxics Standards (MATS) update rule for coal-fired power plants is projected to annually reduce 1,000 pounds of mercury—a neurotoxin associated with brain and spinal cord damage and to which babies are particularly vulnerable—and at least seven tons of non-mercury metals, which include carcinogens such as nickel, arsenic, and

6

hexavalent chromium being emitted into nearby communities. *See* EPA, Final Rule: *National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review*, 89 Fed. Reg. 38508 (May 7, 2024). The rule is expected to yield $300 million in monetizable health benefits alone. *Id.*

33.    After the November 2024 election, industry groups called on the incoming administration to repeal EPA's power plant regulations. *See, e.g.*, Duke Energy et al., Letter to Rep. Zeldin, EPA Administrator Nominee at 5 (Jan. 15, 2025), https://tinyurl.com/ElectricPowertoEPA-011525 (calling on EPA to "immediately work to repeal all portions of the [power plant] GHG Rule").

34.    On January 20, 2025, the President signed the "Unleashing American Energy" Executive Order, directing agencies to "review all existing regulations, orders, guidance documents, policies, settlements, consent orders, and any other agency actions (collectively, agency actions)," related to domestic energy resources, including those related to electric power generation, and to implement plans to "suspend, revise, or rescind all agency actions" imposing an "undue burden" on the "development [ ] or use of domestic energy resources." Exec. Order 14154 §§ 1, 3 (Jan. 20, 2025). In the "Declaring a National Energy Emergency" Executive Order, issued on the same day, the President maintained that "policies of the previous administration" have caused an energy emergency and ordered agencies to "identify and exercise any lawful emergency authorities available to them, as well as all other lawful authorities they may possess, to facilitate the . . . generation of domestic energy resources." Exec. Order 14156 §§ 1, 2(a) (Jan. 20, 2025).

35.    On March 12, 2025, EPA announced that it is reconsidering a number of

7

pollution-reducing standards, including the carbon emissions rule for power plants and the MATS update rule. *See, e.g.*, EPA, Press Release (Mar. 12, 2025) https://www.epa.gov/newsreleases/trump-epa-announces-reconsideration-biden-harris-rule-clean-power-plan-20-prioritized (announcing that EPA will "reconsider" the carbon emissions rule for power plants); EPA, Press Release (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-reconsider-biden-harris-mats-regulation-targeted-coal-fired-power-plants-be (announcing that EPA will "reconsider" the MATS update rule).

36. In March 2025, EPA announced a new exemption process under Clean Air Act Section 112, inviting sources to apply for a presidential exemption from compliance with a variety of pollution standards, including the MATS update rule. *See* Web Archive Snapshot (dated Mar. 27, 2025): EPA, Clean Air Act Section 112 Presidential Exemption Information, https://web.archive.org/web/20250327150027/https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information.

37. On April 8, 2025, the President exempted more than 65 facilities from complying with the MATS update rule. *See* Presidential Proclamation: Regulatory Relief for Certain Stationary Sources to Promote American Energy (Apr. 8, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/rregulatory-relief-for-certain-stationary-sources-to-promote-american-energy; EPA, Annex 1 (Apr. 2025) https://www.epa.gov/system/files/documents/2025-04/regulatory-relief-for-certain-stationary-annex-1.pdf (providing list of exempted sources).

B. **Science Advisory Board and Clean Air Scientific Advisory Committee**

38. The Science Advisory Board ("SAB") was created in 1978 by EPA at the direction of Congress. *See* P.L. 95-155, 91 Stat. 1260 (Nov. 8, 1977). The SAB is a group of independent scientists appointed by the EPA Administrator to advise the agency on scientific and technical

aspects of various environmental issues. The SAB has produced rigorous reviews of EPA's proposed actions, providing feedback on how to strengthen the actions in line with the best available science. SAB review is thus an important part of EPA's regulatory process.

39. The Clean Air Scientific Advisory Committee ("CASAC") was established in 1977 at the direction of Congress to review air quality criteria and make recommendations to the EPA Administrator concerning appropriate air quality standards. *See* P.L. 95-95, 91 Stat. 691, Sec. 106(a) (Aug. 7, 1977).

40. On January 28, 2025, then-Acting EPA Administrator James Payne dismissed the members of the SAB, CASAC, and their panels, via email. The dismissal email stated that the agency has decided to "reset" the committees "to ensure that the agency receives scientific advice consistent with its legal obligations to advance [its] core mission." *See* Email Dismissing SAB, CASAC, and Panels, Reported by E&E News (Jan. 28, 2025), https://subscriber.politicopro.com/eenews/f/eenews/?id=00000194-afb5-de9c-a5b6-efbd96ca0000.

41. On March 12, 2025, EPA announced its intention to publish a notice in the Federal Register seeking nominations for the two advisory committees. EPA, News Release: EPA to Accept Nominations for Science Boards (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-accept-nominations-science-boards. As of today, the agency has yet to publish such notice.

42. EPA has recently announced that it is undertaking actions that would traditionally be subject to review by the SAB, while the SAB has no members after their dismissal in January 2025. For example, on March 12, 2025, EPA announced that it is "reconsidering" the Greenhouse Gas Reporting Program ("GHGRP") Subpart W, which was last updated in May 2024. 89 Fed.

Reg. 42062 (May 14, 2024); EPA, Press Release: Trump EPA Announces OOOO b/c Reconsideration of Biden-Harris Rules Strangling American Energy Producers (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-announces-oooo-bc-reconsideration-biden-harris-rules-strangling-american.

43. The 2024 GHGRP update rule was reviewed by the SAB. *See* SAB Report: *Review of the Science Supporting the Proposed Rule Titled, Greenhouse Gas Reporting Rule: Revisions and Confidentiality Determinations for Petroleum and Natural Gas Systems* (RIN 2060-AV83), EPA-SAB-24-004 (Jan. 17, 2024), https://sab.epa.gov/ords/sab/r/sab_apex/sab/advisoryactivitydetail?p18_id=2644&clear=18&session=15959889786221#report.

44. EPA has not provided a comprehensive explanation of the basis for its decision to dismiss all SAB and CASAC members, nor has it explained its plan for restoring the committees' memberships.

**C. EDF's FOIA Request to EPA Regarding Changes to Clean Air Act Programs for the Power Sector (Request No. 2025-EPA-03608)**

45. EDF submitted a FOIA request to EPA, Request No. 2025-EPA-03608, on February 19, 2025 ("Power Sector FOIA request"), seeking all correspondence and records regarding changes to or other actions related to Clean Air Act pollution reduction standards and programs for power plants, including but not limited to twenty-five specifically identified individuals and nineteen external, non-governmental stakeholders. *See* Ex. 1 (Letter from Richard Yates, EDF, to National Freedom of Information Officer, EPA). EDF identified thirty search terms to facilitate EPA's search. *Id.* at 4.

46. EDF also requested a waiver of fees associated with the Power Sector FOIA request. *Id.* at 5–7; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

47. On February 21, 2025, EDF received a form letter from EPA acknowledging receipt of the Power Sector FOIA request. The letter provided no estimate of when EPA would issue a determination of the Power Sector FOIA request, merely stating that it "was assigned for processing." Ex. 2 (Email from Tracey Klosterman, EPA, to Erin Murphy, EDF).

48. The same day, by separate letter, EPA granted EDF's fee waiver request. Ex. 3 (Correspondence from Tracey Klosterman, EPA, to Erin Murphy, EDF).

49. On February 26, 2025, EDF received an email (the "February 26 email") from EPA stating that the Power Sector FOIA request was being placed on the "complex" processing track with an estimated completion date of May 30, 2025—three months after the statutory deadline for EPA to issue a determination on the Power Sector FOIA request. Ex. 4 (Email from Jonathan Newton, EPA, to Erin Murphy, EDF). EPA informed EDF that an "initial review of [its] request indicates a need to consult with, and collect records from, multiple components of the Agency." *Id.*

50. The February 26 email did not assert that "unusual circumstances" prevented EPA from issuing a timely determination on EDF's request and did not claim to be taking a 10-working-day extension under the statute and regulations. *See id.*

51. The February 26 email did not inform EDF of "the scope of the documents that the agency will produce" or "the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 186; *see* Ex. 4.

52. The February 26 email was not EPA's determination on the Power Sector FOIA request.

53. Nor did the February 26 email extend EPA's deadline for issuing a determination

11

on the Power Sector FOIA request.

54. While the February 26 email provided an estimated completion date of May 30, 2025, EDF did not agree to that date as an alternative time period for EPA to process the Power Sector FOIA request.

55. EPA did not provide a determination on the Power Sector FOIA request within FOIA's 20 working-day deadline, which lapsed on March 20, 2025. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

56. EPA also did not provide EDF with written notice that it was extending that deadline. *See* 5 U.S.C. § 552(a)(6)(B)(i); 40 C.F.R. § 2.104(a)(3), (f).

57. To date, EPA has not issued a determination on the Power Sector FOIA request and has not produced any records in response to the Power Sector FOIA request.

58. The information sought in the Power Sector FOIA request will be essential to understanding the extent of communications between EPA staff and external industry entities regarding EPA actions to roll back power sector pollution reduction standards.

59. The agency's failure to respond to the Power Sector FOIA request within the required timeframe has prevented EDF, its members, and the general public from being fully informed about the extent and nature of external industry communications with EPA.

### D. EDF's FOIA Request to EPA Regarding the Reset of SAB and CASAC (Request No. 2025-EPA-04444)

60. EDF submitted a FOIA request to EPA, Request No. 2025-EPA-04444, on March 11, 2025 ("Science Advisory FOIA request") seeking all correspondence and records related to the membership termination and "reset" of the EPA's SAB and CASAC, including

but not limited to five specifically identified individuals.[1] *See* Ex. 5 (Letter from Erin Murphy, EDF, to National Freedom of Information Officer, EPA). EDF identified four search terms to facilitate EPA's search. *Id.* at 2.

61. Given EPA's fast-moving actions to dismiss members of its scientific advisory committees, the important role of those committees in providing scientific review and expertise to the agency to advance public health and a clean environment, and EDF's strong interest in understanding and publicly sharing the basis for any efforts to undermine the SAB and CASAC, EDF requested expedited processing of the Science Advisory FOIA request. *Id.* at 2–4; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

62. EDF also requested a waiver of fees associated with the Science Advisory FOIA request. *Id.* at 4; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

63. On March 12, 2025, EDF received a form letter from EPA acknowledging receipt of the Science Advisory FOIA request. The letter provided no estimate of when EPA would issue a determination of the Science Advisory FOIA request, merely stating that it "was assigned for processing." Ex. 6 (Email from Joan Chu, EPA, to Erin Murphy, EDF).

64. The same day, by separate correspondence, EDF received a letter from EPA denying its request for expedited processing, asserting that EDF's request did not speak to any urgency to inform the public or identify any expectation of an imminent threat to life or safety. Ex. 7 at 3 (Correspondence from Joan Chu, EPA, to Erin Murphy, EDF).

65. On March 20, 2025, EPA granted EDF's fee waiver request. Ex. 12

---

[1] This FOIA request was originally submitted electronically on February 15, 2025, and assigned tracking number 2025-EPA-03261. *See* Exs. 8; 9. However, the tracking number has since been changed to "TBD" in the EPA FOIA Public Access Portal and EPA did not respond to other efforts to confirm receipt of the request via email. *See* Ex. 10. In light of these issues, EDF refiled this FOIA request on March 11, 2025, and asked EPA to expedite its processing of this time-sensitive request. *See* Ex. 5. The request to expedite was denied. *See* Ex. 7. On March 31, 2025, EPA acknowledged that the March 11 FOIA request was a duplicate and that 2025-EPA-03261 would be closed. *See* Ex. 11.

13

(Correspondence from Tracey Klosterman, EPA, to Erin Murphy, EDF).

66. The same day, by separate letter, EDF received an email ("the March 20 email") from EPA stating that the Science Advisory FOIA request was being placed on the "complex" processing track with an estimated completion date of June 27, 2025—three months after the statutory deadline for EPA to issue a determination on the Science Advisory FOIA request. Ex. 13 (Email from Jonathan Newton, EPA, to Erin Murphy, EDF). EPA informed EDF that an "initial review of [its] request indicates a need to consult with, and collect records from, multiple components of the Agency." *Id.*

67. The March 20 email did not assert that "unusual circumstances" prevented EPA from issuing a timely determination on EDF's request and did not claim to be taking a 10 working-day extension under the statute and regulations. *See id.*

68. The March 20 email did not inform EDF of "the scope of the documents that the agency will produce" or "the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 186; *see* Ex. 13.

69. The March 20 email was not EPA's determination on the Science Advisory FOIA request.

70. Nor did the March 20 email extend EPA's deadline for issuing a determination on the Science Advisory FOIA request.

71. While the March 20 email provided an estimated completion date of June 27, 2025, EDF did not agree to that date as an alternative time period for EPA to process the Science Advisory FOIA request.

72. EPA did not provide a determination on the Science Advisory FOIA request

within FOIA's 20 working-day deadline, which lapsed on April 8, 2025. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

73. EPA also did not provide EDF with written notice that it was extending that deadline. *See* 5 U.S.C. § 552(a)(6)(B)(i); 40 C.F.R. § 2.104(a)(3), (f).

74. To date, EPA has not issued a determination on the Science Advisory FOIA request and has not produced any records in response to the Science Advisory FOIA request.

75. The information sought in the Science Advisory FOIA request will be critical to understanding the facts and circumstances surrounding the dismissal of the members of important scientific advisory bodies at EPA.

76. The agency's failure to respond to the Science Advisory FOIA request within the required timeframe has prevented EDF, its members, and the general public from being fully informed and able to meaningfully respond to the agency's actions.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT
(AS TO THE POWER SECTOR FOIA REQUEST)

77. EDF incorporates by reference all preceding paragraphs.

78. Under FOIA, EDF has a statutory right to have EPA process the Power Sector FOIA Request in a timely manner.

79. Under FOIA, EDF has a statutory right to obtain all non-exempt records responsive to the Power Sector FOIA request.

80. EPA failed to comply with the statutory deadline for issuing a determination on EDF's Power Sector FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

81. EPA failed to make a determination on the Power Sector FOIA request from which EDF could exercise its statutory right of appeal. *See id*.

82. EPA failed to timely produce all non-exempt records responsive to the Power

15

Sector FOIA request. *See id.* § 552(a)(3)(A).

83. Unless enjoined by this Court, EPA will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through its Power Sector FOIA request.

84. It is in the public interest for the Court to issue an injunction compelling EPA's immediate compliance with the Power Sector FOIA request.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT**
(AS TO THE SCIENCE ADVISORY FOIA REQUEST)

85. EDF incorporates by reference all preceding paragraphs.

86. Under FOIA, EDF has a statutory right to have EPA process the Science Advisory FOIA request in a timely manner.

87. Under FOIA, EDF has a statutory right to obtain all non-exempt records responsive to the Science Advisory FOIA request.

88. EPA failed to comply with the statutory deadline for issuing a determination on EDF's Science Advisory FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

89. EPA failed to make a determination on the Science Advisory FOIA request from which EDF could exercise its statutory right of appeal. *See id.*

90. EPA failed to timely produce all non-exempt records responsive to the Science Advisory FOIA request. *See id.* § 552(a)(3)(A).

91. Unless enjoined by this Court, EPA will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through its Science Advisory FOIA request.

92. It is in the public interest for the Court to issue an injunction compelling EPA's immediate compliance with the Science Advisory FOIA request.

## **REQUEST FOR RELIEF**

EDF requests the following relief from the Court:

A. Declare unlawful EPA's failure to provide EDF with a determination on its Power Sector FOIA request and its Science Advisory FOIA request within the applicable deadlines.

B. Declare unlawful EPA's failure to make the requested records promptly available to EDF.

C. Order EPA to provide EDF with all responsive records immediately, at no charge to EDF, and in unredacted form unless an exemption is applicable and properly asserted.

D. Order EPA to provide a *Vaughn* index of any responsive records or portions of records withheld under the claim of a FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

E. Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law.

F. Grant any further relief as the Court deems just and proper.

Respectfully submitted on April 29, 2025.

SHER TREMONTE LLP

*/s/ Justin M. Sher*
Justin M. Sher
Alison Moe
90 Broad Street
New York, New York 10004
Telephone: (212) 202-2600
jsher@shertremonte.com
amoe@shertremonte.com

Erin Murphy (*pro hac vice motion forthcoming*)
Environmental Defense Fund
555 12th St. NW, Suite 400
Washington, D.C. 20004
Telephone: (202) 572-3525
emurphy@edf.org

*Counsel for Environmental Defense Fund*